IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 25-CR-043-JFH |
| ROBERT BIRD, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is an objection [Dkt. No. 48] to the report and recommendation ("R&R") [Dkt. No. 39] of United States Magistrate Judge Jason A. Robertson filed by Defendant Robert Bird ("Defendant"). The United States of America ("Government") filed a response to Defendant's objection. Dkt. No. 52. The R&R recommends that Defendant's Motion to Suppress ("Motion") [Dkt. No. 30] be denied. Dkt. No. 39. For the following reasons, Defendant's objection [Dkt. No. 48] is OVERRULED, the R&R [Dkt. No. 48] is ACCEPTED, and Defendant's Motion [Dkt. No. 30] is DENIED.

## BACKGROUND

### I. Procedural Background

On March 12, 2025, Defendant was charged by indictment with three (3) counts: (1) Murder in Indian Country – Second Degree, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; (2) Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii); and (3) Causing the Death of a Person in the Course of a Violation of Title 18, United States Code, Section 924(c), in violation of 18 U.S.C. § 924(j)(1). Dkt. No. 2. This case is set for jury trial to begin on June 30, 2025. Dkt. No. 27.

On April 17, 2025, Defendant filed a motion to suppress seeking to exclude from trial incriminating statements made by Defendant. Dkt. No. 30. The Court referred the issue to the Magistrate Judge for hearing and report and recommendation. Dkt. No. 31.

On April 30, 2025, the Magistrate Judge held an evidentiary hearing on the motion to suppress during which witness testimony was given and argument was made by counsel. Dkt. No. 36. Defendant filed a supplemental brief in support of his motion to suppress on May 2, 2025. Dkt. No. 38. On May 7, 2025, the Magistrate Judge issued the R&R finding that Defendant's incriminating statements are admissible and recommending that Defendant's request to suppress the incriminating statements be denied. Dkt. No. 39. Defendant timely filed an objection to the R&R [Dkt. No. 48] and the Government filed a response [Dkt. No. 52].

## II. Factual Background[1]

On the afternoon of January 21, 2025, an emergency call was made to the Stillwell Police Department reporting a gunshot wound to the head at 469383 East 820 Road in Stillwell, Oklahoma. Dkt. No. 46 at 5. Detective Gordon Chronister, an investigator with the Stillwell Police Department, responded to the scene. *Id*. When he arrived at the residence, Detective Chronister immediately noticed a woman sitting in a vehicle by the road approximately thirty (30) yards from the residence "hysterically crying on the phone." *Id*. at 6. Detective Chronister made contact with the woman and asked her what was going on. Dkt. No. 46 at 6. She replied with "he's inside." *Id*. Detective Chronister then began to approach the residence. *Id*. As he was about halfway up the driveway, he noticed that an "Indian male had opened the doorway up" and was

---

[1] As there are objections to the Magistrate Judge's factual findings, the Court will set forth its own factual findings based upon the evidentiary hearing testimony [Dkt. No. 46].

standing so that half of his body was blocked by the right side of the door.[2]  *Id*.  Detective Chronister described Defendant as having "a thousand yard stare" and "almost look[ing] right through [him]."  Dkt. No. 46 at 7.  Detective Chronister asked Defendant to come outside and speak with him.  *Id*.  Defendant "plainly said no."  *Id*.  As Detective Chronister continued toward the doorway, Defendant attempted to close the door.  Detective Chronister placed his foot in the threshold of the door to keep it from closing and reached toward Defendant as he was trying to pull away.  *Id*.  Defendant then raised his arms up and said "hey, don't beat on me, don't beat on me, I shot him, he's right there."  Dkt. No. 46 at 9.  Detective Chronister then placed Defendant in handcuffs and sat him down in the threshold of the door and continued into the residence.  *Id*.  Detective Chronister explained that he placed Defendant in the doorway so that he could see him from inside the residence.  *Id*. at 10.  At this time, Detective Chronister was the only law enforcement officer on the scene and he did not know exactly what had transpired or if there were other individuals inside the residence.  *Id*.  Detective Chronister stated that at this time it was his intention to gain control of the scene and render aid if necessary.  Dkt. No. 46 at 11.

Upon entering the residence, Detective Chronister saw a man "slumped forward" on a futon bleeding from a "hole on top of his head."  *Id*.  Detective Chronister observed that the man was "slowly breathing, possibly every five seconds" and was nonresponsive.  *Id*. at 12.  Detective Chronister assessed that the man required medical assistance outside the scope of what Detective Chronister could provide, and he further determined that he could not tend to the injured man while also maintaining a line of sight to Defendant.  Dkt. No. 46 at 13.  Additionally at this time,

---

[2] At the evidentiary hearing, Detective Chronister identified this "Indian male" as Defendant.  Dkt. No. 46 at 6-7.

3

Detective Chronister was communicating via radio to direct other law enforcement officers to the residence and to update paramedics on the condition of the injured man. *Id*. at 14.

At that point, Detective Chronister realized that he did not know the location of the firearm used in the shooting. Dkt. No. 46 at 15. He explained that he did not know whether it was in Defendant's possession or if it was possibly with someone else in the residence. He stated that he "felt very uneasy" with the location of the firearm being unknown to him. *Id*. Detective Chronister asked Defendant where the firearm was and Defendant replied that it was "on the table." *Id*. Detective Chronister was then able to see the firearm lying on a table inside the residence. *Id*. Because Detective Chronister could see the firearm, the injured individual, and Defendant from where he was positioned, he did not feel that it was necessary to seize the firearm at that point. Dkt. No. 46 at 16. Subsequently, Defendant began "rambling" and repeating "that boy, he wouldn't listen . . . he kept saying I wouldn't do it, so I shot him." *Id*. at 17. Shortly thereafter, other law enforcement officers arrived. *Id*.

## AUTHORITY AND ANALYSIS

### I. Standard

When a party objects to a report and recommendation, the Court is statutorily required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id*. Here, Defendant makes several objections to the R&R. The Court will make a de novo determination as to each of Defendant's objections below.

II. Analysis

A. Defendant's Statement Prior to Custody

First, Defendant objects to the Magistrate Judge's findings regarding the admissibility of Defendant's statement prior to being placed in handcuffs. As set forth earlier, Detective Chronister responded to the residence following a report of a gunshot wound to the head. Detective Chronister was the only law enforcement officer on the scene at this time. As Detective Chronister approached the residence, Defendant stood in the doorway with half of his body hidden by the door. Detective Chronister asked Defendant to come out and speak with him and Defendant said no. Detective Chronister then continued toward the residence and Defendant began to shut the door. Detective Chronister put his foot in the doorway to prevent it from closing and reached toward Defendant as he was pulling away. Defendant then said "hey, don't beat on me, don't beat on me, I shot him, he's right there." Defendant argues that Detective Chronister's actions preceding his statement intimidated him and, therefore, render his statement involuntarily and inadmissible.

i. **Objection to the Magistrate Judge's finding regarding intimidation and voluntariness of Defendant's statement**

Defendant's first specific objection is that the Magistrate Judge failed to properly consider evidence of intimidation. Dkt. No. 48 at 1-2. Specifically, Defendant argues that "Detective Chronister's actions when he forced his way into [Defendant's] home intimidated [Defendant] and under the 'totality of the circumstances' served to render his subsequent statements involuntary." *Id*. at 4. According to Defendant, the totality of the circumstances included: 1) that it was not clear from Defendant's perspective that Detective Chronister was there to render aid to the gunshot victim rather than for investigative purposes; and 2) that there was a significant size disparity between Defendant and Detective Chronister. *Id*. at 3. Defendant asserts that "behavior by a police officer perceived to be threatening can render a confession involuntary." *Id*.

5

Voluntary statements made by an individual prior to being taken into custody and subjected to custodial interrogation are generally admissible. However, the Tenth Circuit has applied the same totality of the circumstances analysis used when evaluating an allegedly involuntary *Miranda* waiver when evaluating whether a confession is involuntary in this context. *United States v. Perez*, 127 F.4th 146, 171 (10th Cir. 2025) (citing *United States v. Pena*, 115 F.4th 1254, 1261 (10th Cir. 2024)). Under the totality of the circumstances analysis, the court considers: "(1) the Defendant's age, intelligence, and education; (2) the detention's length; (3) the questioning's length and nature; (4) whether law enforcement advised Defendant of his constitutional rights; and (5) whether law enforcement subjected Defendant to physical punishment." *Id.* "The overarching question is whether 'law enforcement overbore the defendant's free will and critically impaired the defendant's capacity for self-determination.'" *Id.*

Considering the factors here, the Court finds that Defendant's free will was not overborne to such a degree that impaired Defendant's capacity for self-determination under the totality of the circumstances. First, while the record indicates that Defendant is seventy (70) years of age, the record does not explicitly set forth Defendant's intelligence or education. Therefore, the Court finds the first factor to be neutral. While Detective Chronister had previously asked Defendant to speak with him, the record does not demonstrate that Defendant was under any type of detention or subject to questioning at the time of his statement. Therefore, the second and third factors weigh in favor of voluntariness. Defendant had not been advised of his constitutional rights at the time he made this statement but, again, he was also not under custodial interrogation at this time. The fourth factor weighs in favor of voluntariness. Finally, the Court finds that Defendant was not subject to physical punishment. Detective Chronister had not yet made physical contact with

6

Defendant at the time he made the statement. Therefore, the fifth factor also weighs in favor of voluntariness.

Regarding intimidation, it is true that Detective Chronister was moving toward Defendant and reaching for him as Defendant made the statement. However, the evidence shows that this was in response to Defendant, who was concealing half of his body with the door, shutting the door to the residence where a gunshot wound to the head was just reported. Clearly, this is not a case where the police beat a confession out of a defendant, but rather a situation where some force was required for a law enforcement officer to carry out his duties. *See United States v. Cash*, 733 F.3d 1264, 1282 (10th Cir. 2013) (quoting *United States v. Carroll,* 207 F.3d 465, 472 (8th Cir.2000)) ("This is 'not a case where the police beat a confession out of a defendant, but rather a situation where the police were required to use force to subdue a fighting suspect.'"). Here, because Defendant had declined to speak with Detective Chronister and was closing the door to the residence where a gunshot wound to the head had been reported, some force was necessary to enter the residence for purposes of gaining control of the scene and rendering aid. For these reasons, the Court does not find evidence of intimidation to such a degree to render Defendant's statement involuntary.

Defendant further argues that appropriate consideration was not given to the physical disparities between Defendant and Detective Chronister. Dkt. No. 48 at 3. Defendant points to evidence that he is "elderly and slight in stature" while Detective Chronister is "30 years younger and 4-6 inches taller" and "outweighed [Defendant] by over a hundred pounds." *Id*. Even upon considering the physical disparities between Defendant and Detective Chronister, the Court finds that Detective Chronister did not leverage his greater size to exert improper influence over Defendant. Coercive police activity is a necessary predicate to a finding that a confession is not

voluntary within the meaning of the Fifth Amendment. *See United States v. Erving L.*, 147 F.3d 1240, 1248-49 (10th Cir. 1998). Again, the evidence is clear that Detective Chronister did not move and reach toward Defendant to obtain a confession from Defendant, but rather did so as a result of Defendant attempting to close the door to the residence where a gunshot wound to the head had just been reported. Detective Chronister testified that at that point, he did not know whether it was Defendant or someone else inside the residence who had been shot and, as the first officer on scene, it was necessary to gain control of the situation, determine what had happened, and render aid if necessary.

In consideration of the relevant factors and the totality of the circumstances, the Court finds that Defendant was not intimidated to such a degree as to render his statement involuntary and, therefore, Defendant's objection is overruled.

> **ii.     Objection to the Magistrate Judge's recommendation to admit Defendant's statement based upon a finding of no Fourth Amendment violation**

Defendant next objects to "the use of a Fourth Amendment exigency to justify the admission of [Defendant's] confession . . . ." Dkt. No. 48 at 5. Defendant argues that although Detective Chronister's entry into the residence was justified by exigent circumstances under the Fourth Amendment, this does not excuse an alleged Fifth Amendment violation. As the Court has made a de novo determination that Defendant's first statement was voluntary and did not violate Defendant's Fifth Amendment rights, this argument is moot.

> **iii.    Objection to the Magistrate Judge's finding that Defendant understood Detective Chronister's purpose for being at the residence**

Defendant also objects to the Magistrate Judge's factual finding that Defendant understood Detective Chronister's purpose for being at the residence. Dkt. No. 48 at 5-6. As the Court has

made a de novo determination that Defendant's first statement was voluntary and did not violate Defendant's Fifth Amendment rights, this argument is moot.

### B. Defendant's Statement After Custody

After Defendant was placed in handcuffs, he made additional statements. First, Defendant responded "it's on the table" when Detective Chronister asked Defendant where the firearm was located. Next, Defendant stated "That boy won't listen. He wouldn't do it so I shot him." Defendant characterizes these statements as one continuous statement in response to Detective Chronister's question regarding the location of the firearm. However, the evidence supports that these were two separate statements. Specifically, Defendant stated "it's on the table" immediately following Detective Chronister's question regarding the location of the firearm. Dkt. No. 46 at 15. According to Detective Chronister's testimony, subsequent to this question being asked and answered, Defendant "just kind of sat up there rambling on. I remember him saying that . . . that boy, he wouldn't listen. He kind of repeated that. And then he said, he kept saying I wouldn't do it, so I shot him." *Id*. at 17 (internal quotations omitted). Regardless, even if the statements are considered one continuous statement, the Court finds that the statement is voluntary and not in violation of Defendant's Fifth Amendment rights.

"The Fifth Amendment to the U.S. Constitution guarantees that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'" *United States v. Crisp*, 371 Fed. Appx. 925, 927 (10th Cir. 2010) (unpublished) (quoting U.S. CONST. AMEND. V). Pursuant to the Supreme Court's holding in *Miranda v. Arizona*, "a suspect's statements are generally inadmissible if law enforcement officers elicited them during a custodial interrogation without giving the prescribed warnings and obtaining a waiver." *Crisp*, 371 Fed. Appx. at 927 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). However, law enforcement need not administer *Miranda*

9

warnings to everyone they question. *Miranda* applies only to custodial interrogations. *United States v. Eckhart*, 569 F.3d 1263, 1275 (10th 2009) (citing *United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) and *United States v. Rogers*, 391 F.3d 1165, 1169 (10th Cir. 2004)).

Custodial interrogation is "questioning initiated by law enforcement officers after an individual has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). An individual is in custody for purposes of *Miranda* when a reasonable person in the individual's position would understand their situation to be "the functional equivalent of formal arrest." *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007). This is an objective inquiry that considers the totality of the circumstances. *Id*. at 1275. In making such a determination, the Court considers the following factors: "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [the defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview." *Revels*, 510 F.3d at 1275.

Here, the Court finds that Defendant was in custody for purposes of *Miranda*, because a reasonable person in Defendant's position would understand his situation to be the functional equivalent of formal arrest. Although Detective Chronister was the only law enforcement officer present at this time, Defendant was handcuffed and Detective Chronister made entry into Defendant's residence without his consent. The Court finds that this is sufficient under the circumstances to constitute a police-dominated atmosphere under the first factor. Regarding the second factor, Detective Chronister asked Defendant a single question: where the firearm was located. However, the nature of the question could possibly be construed as accusatory in that it

10

assumes that Defendant had knowledge of the location of the firearm. Finally, Detective Chronister did not make Defendant aware that he was not required to answer his question. Accordingly, *Miranda* applied under the circumstances here.

There are, however, certain exceptions to the *Miranda* requirement. Of relevancy here is the public safety exception. Under the public safety exception, law enforcement may question an individual in custody prior to giving a *Miranda* warning if the questioning arises out of "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *United States v. DeJear*, 552 F.3d 1196, 1199 (10th Cir. 2009) (citing *New York v. Quarles*, 467 U.S. 649, 659 (1984)). For the public safety exception to apply, law enforcement must have reason to believe "(1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id*. at 1196.

The Court finds that Detective Chronister's question regarding the location of the firearm arose out of an objectively reasonable need to protect himself and others from immediate danger related to the firearm. Based on Defendant's statement prior to custody that he "shot him," the Court finds that Detective Chronister had reason to believe that Defendant might have, or recently had, a firearm. Because Detective Chronister did not know where the firearm was located, or whether there were other individuals in or around the residence that could access it, the Court finds that there was also a reasonable belief that someone other than police might gain access to the firearm and inflict further harm. The Court finds that this situation falls squarely within the public safety exception to the *Miranda* requirement and Defendant's statement is therefore admissible.

### i. Objection to the Magistrate Judge's failure to evaluate Defendant's statements after he was handcuffed under the totality of the circumstances

Regarding Defendant's specific objections, Defendant first argues that the Magistrate Judge erred in failing to consider the intimidation that occurred prior to being handcuffed when determining the admissibility of the statement made after Defendant was handcuffed. However, the Court has already addressed Defendant's argument regarding intimidation and determined that under the circumstances there was no evidence of intimidation to such a degree to render Defendant's statement involuntary. That same finding applies here and, therefore, Defendant's objection is moot.

Defendant further objects to the Magistrate Judge's finding that "Detective Chronister did nothing to cause the statement to be made . . ." regarding Defendant's statement "That boy won't listen. He wouldn't do it so I shot him." Dkt. No. 48 at 6. He argues instead that this statement was in direct response to Detective Chronister's question regarding the location of the firearm. As the Court noted earlier, the evidence supports that these were two separate statements. Regardless, even if considered as a single statement, the Court found it admissible for the reasons discussed above. This argument is also moot.

### ii. Objection to the Magistrate Judge's application of *Quarles* and *DeJear*

Defendant argues that because *Quarles* and *DeJear* are factually distinguishable from the present case, the Magistrate Judge erred in applying these cases. Specifically, regarding *Quarles*, Defendant argues that it does not apply because the gun in the instant case was in a private area as opposed to a public supermarket as in *Quarles*. Dkt. No. 48 at 9. However, the Tenth Circuit has noted that "[i]t is irrelevant that the principal danger [ ] was the risk of injury to [law enforcement] officers or Defendant himself, rather than ordinary members of the 'public.'" *United States v. Lackey*, 334 F.3d 1224, 1227 (10th Cir. 2003). The Tenth Circuit explained that the public safety

exception set forth in *Quarles* "extends beyond safety to civilians" and "extends to officers' questions necessary to secure their own safety." *Id*. (internal citations omitted). Even though not in a public place, the public safety exception applies here where there was a risk of injury to Detective Chronister, other individuals who may have been in or around the residence, and other law enforcement officers who were en route to the residence.

Likewise, regarding *DeJear*, Defendant argues that it does not apply because, while Defendant was handcuffed at the time of Detective Chronister's question, the defendant in *DeJear* was not handcuffed or restrained. Again, the Court is not persuaded. A safety risk continued to exist even after Defendant was handcuffed—Detective Chronister did not know where the firearm was located and did not know whether there were other individuals in or around the residence that could access the firearm. For these reasons, Defendant's objections regarding the application of *Quarles* and *DeJear* are overruled.

### iii. Objection to the Magistrate Judge's finding that Defendant's statement was voluntary

This objection reasserts Defendant's earlier objections regarding the Magistrate Judge's failure to consider intimation and failure to consider Defendant's statements after he was handcuffed as a single statement in response to Detective Chronister's question. As these objections have already been resolved, this objection is moot.

### iv. Objection to any suggestions by the Magistrate Judge that at the time Defendant was handcuffed he was not "in custody" for purposes of *Miranda*

Defendant objects to any finding by the Magistrate Judge that Defendant was not in custody for purposes of *Miranda* when he was handcuffed. As the Court has made a de novo finding that Defendant was in custody for purposes of *Miranda*, this objection is moot.

> v. **Objection to the Magistrate Judge's finding that Detective Chronister did not seize the firearm because he was acting as a first responder.**

Defendant objects to the Magistrate Judge's factual finding that Detective Chronister was acting as a first responder when he entered the residence. Dkt. No. 48 at 12. Defendant appears to concede that whether Detective Chronister was acting as a first responder or an investigator is irrelevant. *Id*. The Court agrees that this has no relevance and, therefore, this objection is moot.

> vi. **Objection to the Magistrate Judge's finding that Detective Chronister was acting as a first responder**

Again, Defendant objects to the Magistrate Judge's factual finding that Detective Chronister was acting as a first responder because "[t]here was no evidence that Detective Chronister entered the residence with any medical emergency equipment." Dkt. No. 48 at 12. Again, the Court finds that this has no relevance to a determination of admissibly and, therefore, this objection is moot.

> vii. **Objection to the Magistrate Judge's finding that Detective Chronister's question regarding the location of the gun was motivated by a legitimate public safety concern**

Defendant objects to the Magistrate Judge's finding that Detective Chronister asked for the location of the firearm due to a legitimate public safety concern. Dkt. No. 48 at 12. The Court, in its de novo review, determined that Detective Chronister's question regarding the location of the firearm arose out of an objectively reasonable need to protect himself and others from immediate danger related to the firearm and, therefore, the public safety exception applied. The Court is not convinced by Defendant's argument that "[a]ny safety concerns were assuaged by handcuffing [Defendant]." *Id*. at 13. As explained earlier, Detective Chronister was the only law enforcement officer at the scene of a gunshot wound to the head, he did not know where the firearm was located, and he did not know whether there were other individuals in or around the residence that could access the firearm. A legitimate safety concern existed. This objection is overruled.

### viii. Objection to the Magistrate Judge's finding that the public safety justification continued to exist after Defendant was placed in handcuffs

Again, Defendant objects to the Magistrate Judge's finding that the public safety exception continued after Defendant was placed in handcuffs. Dkt. No. 48 at 14. Defendant argues that once handcuffed, any safety concern dissipated. *Id*. For the reasons stated above, this objection is overruled.

### CONCLUSION

IT IS THEREFORE ORDERED that the Report and Recommendation [Dkt. No. 39] is ADOPTED, Defendant's Objection [Dkt. No. 48] is OVERRULED, and Defendant's Motion [Dkt. No. 30] is DENIED.

Dated this 11th day of June 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE